Bernard S. Meyer, J.
In this special proceeding petitioner seeks (1) a compromise order pursuant to subdivision 5 of section 29 of the Workmen’s Compensation Law approving settlement of an action for conscious pain and wrongful death in which she, as administratrix of her husband’s estate, is plaintiff, and (2) an order fixing distribution of the proceeds of settlement pursuant to section 133 of the Decedent Estate Law. The compensation carrier opposes the application on the grounds that “the offer of $20,000 * * * is grossly inadequate in the light of the * * * special damages, the liability of the defendant, and the injuries of death allegedly suffered by the decedent’’ and because subdivision 5 of section 29 is unconstitutional.
The settlement is approved as reasonable in amount. Decedent was injured on September 18,1963 when his car was struck in the rear, while stopped waiting for a red light, by a car operated by the third party. The report of his family doctor dated October 11, 1963 stated his injury as ‘ ‘ acute sprain of cervical and lumbar spine. Contusion, left knee,’’ showed six office visits with treatment continuing and as to permanence answered “ cannot state ’’. A December 3, 1963 report of the same doctor stated that there had been tenderness and spasm on examination, that on November 1, 1963, decedent complained of pains in the chest and throat and some vague abdominal distress. On November 3, 1963 at 3:00 a.m. decedent was taken by ambulance to Mid-Island Hospital complaining of pains in the chest, which the hospital record states to have been “ of 6 weeks duration, following a vehicular accident ’’. He died shortly after noon on the same day, according to the hospital record of “Acute myocardial infarction’’, according to the autopsy report of ‘ ‘ Massive cardiac tamponade due to ruptured aorta, ascending ”. A C-4 filed by decedent’s doctor on May 26, 1964 stated “ Chest pain from time to time following accident; this became severe 11/1/63.’’ The preference papers include medical reports from two other doctors concluding that the trauma of September 18, 1963 injured the aorta, resulting ultimately in rupture and death. The report of Doctor Clark, a pathologist retained by the third party, annexed to the papers on this application, demonstrates, however, that in view of the autopsy findings and the chronology, decedent’s death could not have occurred through traumatic rupture. Decedent’s age is given as both 48 and 49 in the various documents; the bill of particulars states 49. His average weekly wage was $173 and lost earnings for the six weeks of disability $1,113. Medical *214 expenses were $189, drugs $15, Mid-Island Hospital bill $77 and funeral expenses $987.
Since neither his October 11, 1963 nor his December 3, 1963 report mentions existence of chest pains prior to November 1, 1963, the doctor’s notation in the C-4 of earlier chest pains and his testimony on trial if consistent with the C-4 would be highly vulnerable. Unless it is established that there was in fact pain immediately after the injury persisting for the intervening six weeks, the reports of the other two doctors upon whom petitioner would have to rely would be without foundation. The probability that a jury would find against causal relationship is, therefore, great. Unless causal relationship of the death is established, petitioner could recover only lost earnings of $1,113, medical and drug expense of $204 and for cervical and lumbar sprain of six weeks’ duration, or between $3,500 and $4,000. While a wrongful death verdict would, in view of decedent’s life expectancy of 23.6 years and the fact that he left, in addition to his wife, children who were 16, 12 and 8 years of age, be substantially in excess of the remaining $16,000 to $16,500 if petitioner were to recover on the wrongful death cause of action, the court deems the probability that she will recover on that cause of action not great and the settlement, therefore, reasonable in amount. Since the determination thus made pursuant to subdivision 5 of section 29 is the same as that provided for in section 135 of the Decedent Estate Law, the judgment to be entered in this proceeding will approve the settlement under both sections.
The carrier claims that subdivision 5 of section 29 of the Workmen’s Compensation Law is unconstitutional because “ it violates due process of law ’ ’, provides no opportunity to the carrier to examine claimant, third party and other material witnesses under oath, and abrogates the historical method under which the value of the case against the third party was determined by court and jury in a regular trial. Whether the Federal or the State Constitution is referred to is not revealed, but in either case the argument does not withstand analysis. Section 18 of article I of the State Constitution provides in pertinent part: “Nothing contained in this constitution shall be construed to limit the power of the legislature to enact laws for * * * the payment * * * either directly or through a * * * system of insurance * * * of compensation for injuries to employees or for the death of employees resulting from such injuries * * * or for the adjustment, determination and settlement, with or without trial by jury, of issues which may arise under such legislation ” (emphasis supplied); *215 and it is now well established that that provision removes all State constitutional limitations whatever on the enactment by the Legislature of compensation laws (Shanahan v. Monarch Eng. Co., 219 N. Y. 469, 476; Matter of Schmidt v. Wolf Contr. Co., 269 App. Div. 201, 207, affd. 295 N. Y. 748; Matter of Sager v. General Elec. Co., 269 App. Div. 801, app. dsmd. 298 N. Y. 752; even though it establishes an unusual practice, Matter of McQueeney v. Sutphen & Myer, 167 App. Div. 528, 530).
If we turn to the Federal Constitution, the carrier fares no better. Subdivision 5 of section 29 of the Workmen’s Compensation Law as amended in no way affects the carrier’s lien under subdivision 1 of section 29; no power is given the court to reduce or eliminate the lien. Neither does subdivision 5 of section 29 as amended in any way affect the carrier’s right as statutory assignee under subdivision 2 of section 29 to control the assigned third-party action, including the determination whether it shall be compromised. Nor does it affect any right the carrier had to control a third-party action brought by the injured employee, for under former subdivision 5 of section 29 control of that action, including whether it should be tried before the court alone or before a jury and whether it should be compromised, rested solely with the employee and the carrier was entitled only (1) to credit to the extent of “ the amount of the recovery * * * actually collected ” (§29, subd. 4), and
(2) to defend the compensation claim if the third-party action was settled for less than the amount of compensation payable and without the carrier’s consent.
Under subdivision 5 of section 29, as amended, the carrier still gets credit for the full amount of the recovery actually collected, but that amount may now bo arrived at by court-approved compromise. Its complaints, then, can be reduced to: (1) evaluation of the third-party claim is by a court rather than by a jury, (2) it gets credit only for what is actually received rather than some larger .sum the employee might have recovered, (3) it has been deprived of a defense against the compensation claim which existed when the employee’s injuries occurred, and (4) the employee can take a position in the compromise proceeding that is inconsistent with that which he urges in the compensation proceeding.
That evaluation of the third-party claim is by the court in the compromise proceeding rather than a jury in the third-party action does not affect constitutionality of the statute, because the due process clause of the Fourteenth Amendment does not mandate jury trial in State court civil proceedings (New York Cent. R. R. Co. v. White, 243 U. S. 188). Subdivision *216 5 of section 29 as amended requires notice to the carrier and affords it the opportunity to submit affidavits and to be heard by the court. Whether the compromise proceeding be regarded as a motion in the third-party action or an independent special proceeding, the carrier has the right upon a proper showing to disclosure for the purpose of ascertaining facts relevant to whether the action should be compromised (CPLB 105, subd. [b], 408, 3101, 3106). By requiring that the carrier be made party to the compromise proceeding, the amended section 29 (subd. 5) has, therefore, given it rights that it did not have under the former provision. Thus, its right to fair trial of the issue has not been violated.
The objection that the credit to which the carrier is entitled might be higher if the third-party action went to verdict is answered by Matter of Dalberth v. Iuppa & Battle Co. (262 N. Y. 537, 564, app. dsmd. for want of a substantial Federal question 291 U. S. 646). That case upheld, against the claim that the Fourteenth Amendment was violated, the provision of the Workmen’s Compensation Law that the earning capacity of a partially disabled employee be determined by his actual earnings rather than what he could have earned.
While it is true that at the time the injury occurred a defense would have accrued to the carrier if the employee settled his third-party action without the carrier’s consent and that under subdivision 5 of section 29 it no longer has that defense if the compromise is court-approved, the change has deprived the carrier of no Federal constitutional right. In' the first place, until settlement of the third-party action the carrier’s right was inchoate, not vested, and when the instant case was settled, the defense existed only in its modified form. Secondly, by the express wording of former subdivision 5 of section 29 the defense was given directly to the carrier. It was, therefore, statutory, not contractual (see Matter of Schmidt v. Wolf Contr. Co., 269 App. Div. 201, 207, affd. 295 N. Y. 748) and a wholly statutory right may be terminated by repeal of the statute even though rights have accrued under it (Battaglia v. General Motors Corp., 169 F. 2d 254 [C.A. 2d], cert. den. 335 U. S. 887 [the portal-to-portal pay cases]; Rookledge v. Garwood, 340 Mich. 444 [statute revoking third party’s defense that employer by electing to take compensation waived his .right to sue third party held constitutional though enacted after the injury in question occurred]). No one has a vested interest in any rule of law entitling him to insist that it remain unchanged for his benefit (New York Cent. R. R. Co. v. White, 243 U. S. 188, supra; Matter of Jensen v. Southern Pacific Co., 215 N. Y. 514, 527, *217 revd. on other grounds 244 U. S. 205). Thirdly, even if it be assumed that the defense somehow had basis in contract between the carrier and the employee or that its alteration impaired contractual rights between the carrier and the employer, there nonetheless would be no violation of the Federal Constitution. Thus, in Savitt v. L. & F. Constr. Co. (123 N. J. L. 149, mod. on another point 124 N. J. L. 173) a provision of the compensation statute entitling the employer to credit for the gross amount recovered by the employee in the third-party action was amended, after the date of the injury in question, to reduce the amount of the credit by the attorney’s fee paid in the third-party action. It was held not to impair the obligation of contract. (See, also, Matter of Schmidt v. Wolf Contr. Co., 269 App. Div. 201, 207, affd. 295 N. Y. 748, supra.)
Finally, the fact that inconsistent or partially inconsistent results may be reached on the compromise hearing and in the compensation proceeding deprives the carrier of no constitutional right. The carrier’s right to defend the compensation proceeding on the ground that death was not causally related is untouched. Beyond that, however, the third-party common-law negligence action is a totally different kind of action than the status-related insurance coverage provided, irrespective of fault, under the compensation statute. For this reason the compensation statute need contain no provision subrogating the carrier to the employee’s rights against the third party (Updike Adv. System v. State Ind. Comm., 282 P. 2d 759 [Okla.], and, in at least three States, there is no such provision (2 Larson, Workmen’s Compensation Law, p. 206, § 74.11). If the compensation recovery is sufficiently unrelated to the third-party recovery that there need be no subrogation, it cannot affect constitutionality that inconsistent results may be reached in the two proceedings. In any event, the inconsistency is more apparent than real, for the compromise approval is based not upon a determination that there is no causal relationship but only that there is a strong probability that a jury may so find.
There remains the question of allocation of the settlement between the two causes of action and determination of how the wrongful death recovery should be distributed. Mindful of the question raised but left unanswered in Matter of Rushford v. Perini Corp. (24 A D 2d 775) concerning the power to allocate the proceeds of settlement in a manner designed to increase the liability of the carrier for payment of deficiency compensation, and on its own evaluation, supra, of the possible recovery in the conscious pain action, the court allocates to that action $3,500 and to the wrongful death action $16,500. The fee of *218 the attorney on the first canse of action is fixed at $1,100 and on the second, at $5,500, both inclnsive of disbursements. After deduction of the attorney’s fee and funeral expenses of $987 (Matter of Vacca, 42 Misc 2d 120), the balance of the wrongful death recovery remaining for distribution is $10,013. Accepting the statement of decedent’s age contained in the bill of particulars, the court finds that at his death decedent was 49 years of age and had a life expectancy of 23.6 years and his wife was 43 years of age and had a life expectancy of 32.9 years. Their “ joint ” expectancy was thus 23.6 years. His daughter Geraldine, born June 26, 1947 would reach majority in 4 years, 8 months and 23 days, his daughter Valerie, born September 29, 1951 would reach majority in 8 years, 10 months and 26 days, his son Martin, born August 16, 1955 would reach majority in 12 years, 9 months and 13 days. Using the formula set forth in Matter of Kaiser (198 Misc. 582), and there being no evidence that any of the children will require support beyond majority, the court fixes distribution to the widow of 47.2%, to Geraldine of 9.5%, to Valerie of 17.8%, and to Martin of 25.5%.